**BIDDLE AVENUE REALTY CORPORA- TION v. COMMISSIONER OF INTER- NAL REVENUE.**

No. 7351.

Circuit Court of Appeals, Sixth Circuit.

Feb. 15, 1938.

Fred J. Schumann, of Detroit, Mich., for petitioner.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key and John M. Hudson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS and SIMONS, Circuit Judges, and RAYMOND, District Judge.

RAYMOND, District Judge.

This is a petition to review an order of the Board of Tax Appeals assessing a deficiency income tax against petitioner for the fiscal year ended April 30, 1929, in the sum of $15,110.35. While there are numerous assignments of error, there is accord that the fundamental issue is whether the taxpayer did on or about November 1, 1928, sell real estate known as the "Detroit Plant" of the Detroit Shipbuilding Company to the James S. Holden Company for the sum of $1,278,750, realizing a profit therefrom of $215,000 or whether the transaction was, in fact, merely a sale or disposal of an option on the plant. Petitioner's contention is that it did not at any time own or sell the property or the mortgage notes of $750,000 which were given by the Holden Company in part payment thereof, and that the legal effect of the established facts is that it sold or disposed of an option and acted in the transaction merely as an agent, trustee, or conduit for the transfer of title from vendor to purchaser. It insists that upon a mere sale of the option the taxpayer is taxable only under the provisions of section 44 of the Revenue Act of 1928, 26 U.S.C.A. § 44 and note, permitting the return of profit on the installment basis.

The facts found by the Board of Tax Appeals and conceded or supported by substantial evidence are in substance as follows: Petitioner was incorporated in May, 1927, to engage in the real estate business and shortly after its incorporation M. E. Farr, its president and principal stockholder, assigned to it an option secured by him in 1925 from the Detroit Shipbuilding Company for the purchase of real estate known as "Detroit Plant" for $1,000,000. On or about November 1, 1928, the property was sold to James S. Holden Company as purchaser for an undisclosed principal, for a consideration of $1,278,750, which, after deduction of a mortgage tax of $3,750 and $60,000 commission to the Holden Company, represented a profit to petitioner of $215,000. Minutes of a directors' meeting of petitioner held "as of" October 1, 1928, record a resolution which authorized its officers to enter into an agreement with the Holden Company for the sale of the property, to proceed with the purchase of the plant in accordance with the option, and to pay to the Detroit Shipbuilding Company the price as agreed in the option; namely, $250,000 in cash and $750,000 in notes se-

cured by mortgage. The Detroit Shipbuilding Company by deed dated October 31, 1928, conveyed the property to petitioner and by deed dated November 1, 1928, petitioner conveyed to the Holden Company; the conveyance containing a covenant that the taxpayer was well seized of the land in fee simple, and that it would warrant and defend against all lawful claims. Upon closing the transaction the taxpayer received from the Holden Company the agreed price of $1,278,750, of which $378,750 was cash, $150,000 was in the form of fifteen unsecured notes of equal amount payable November 1, 1932, and $750,000 was in purchase-money mortgage notes of equal amount due on November 1, 1929, November 1, 1930, and November 1, 1931, secured by mortgage upon the property and executed by the Holden Company in which notes and mortgage the petitioner was named as payee and mortgagee. The taxpayer paid to the Detroit Company the $1,000,000 purchase price agreed upon, of which $250,000 was cash and $750,000 was in mortgage notes of the Holden Company indorsed by the taxpayer without recourse. The deeds, checks, and other documents were delivered simultaneously to the parties respectively entitled to them. Petitioner was never in physical possession of the property conveyed. Entries in its books reflect the transaction as a sale by petitioner to the Holden Company, and petitioner's return for the fiscal year ended April 30, 1929, discloses a net profit of $215,000 on real estate "acquired November 1, 1928." The Board of Tax Appeals found that there was a sale of the property to the taxpayer and a sale by the taxpayer to the Holden Company, and that the transactions were not in fact merely the sale or transfer of an option. The Board also found that the taxpayer was liable for income taxes including not only the installment payments actually received from the Holden Company within the taxable year, but also upon the amount realized by its transfer to the Detroit Shipbuilding Company of the installment obligations represented by the mortgage notes aggregating $750,000.

The taxpayer urges that the findings of fact of the Board of Tax Appeals are not conclusive in this case. See Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. ——, and Palmer v. Commissioner, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. ——. Assuming, without deciding, the accuracy of this contention, the court is of opinion that the claims of petitioner cannot be sustained.

The record is devoid of testimony to support the claim that there was a sale or transfer of the option or that a sale or transfer of it in any form was at any time contemplated by the parties. Such a transaction was not agreed upon, authorized, or executed. There were no negotiations for its sale. There was no agreed price or instrument of transfer. Indeed, in its reply brief petitioner states that in fact the option was never exercised and that its terms were practically disregarded, in that there was no down payment by petitioner of $250,000 as provided by the option, and that there was no agreement for payment of $750,000 "on or before one year." The argument of the taxpayer is predicated upon the fact that the deeds of conveyance though dated on consecutive days were, in fact, delivered simultaneously with the other documents and consideration, and that there was no instant of time during which title actually vested in the taxpayer.

It is clear that for all purposes connected with the sale other than the assessment of a tax, the well-known rule of law would be applicable that when two or more deeds, conveyances, or contracts of any sort are made simultaneously, and so connected with each other that they may be regarded as one transaction, these contracts and conveyances should be held to take effect in such order of priority and succession as shall best carry into effect the intention and best secure the rights of all the respective parties. See Pomeroy v. Latting, 15 Gray, Mass., 435; Loomis v. Pingree, 43 Me. 299; Crabtree v. Crabtree, 136 Iowa 430, 113 N. W. 923, 15 Ann.Cas. 149. No reason appears for application of a different rule in cases relative to taxation. Obviously, whatever title the Holden Company obtained was not from the Detroit Shipbuilding Company but from the taxpayer, and the only title which the Shipbuilding Company obtained to the mortgage notes amounting to $750,000 was in consequence of the indorsements thereof by the taxpayer. The language of the Supreme Court in the case of Founders General Corporation v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457, 460, 81 L.Ed. 639, is pertinent to the situation here, "To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty."

No issues are raised concerning the correctness of the computation of tax made by the Board of Tax Appeals. Its order is therefore affirmed.