[L. A. No. 21344. In Bank. Apr. 27, 1951.]

B. M. FREEDMAN, Appellant, v. THE RECTOR, WARDENS and VESTRYMEN OF ST. MATTHIAS PARISH OF LOS ANGELES (a Religious Corporation), Respondent.

18

Blase A. Bonpane and L. H. Phillips for Appellant.

Steiner A. Larsen for Respondent.

TRAYNOR, J.—On October 8, 1947, plaintiff signed a deposit agreement with Clarence Urban, a real estate broker, for the purchase of two lots owned by defendant. He paid $2,000 down and agreed to pay the balance of $16,000 into escrow within 30 days. Both parties signed the escrow instructions a few days later. Although the deposit agreement was ambiguous with respect to title requirements, the escrow instructions provided that the property should be free of encumbrances except "covenants, conditions, restrictions, reservations, rights, rights of way, [and] easements . . . now of record." There was evidence that at the time plaintiff signed the escrow instructions he was informed of all covenants and easements affecting the property, but he took the position thereafter that he was under no obligation to purchase the property until the title had been cleared. On November 20th the escrow agent informed plaintiff that the title was clear except for an easement held by the water and power department across the rear 5 feet of one of the lots. This easement was abandoned the following April. On November 28th plaintiff wrote defendant and the escrow agent repudiating the contract and demanding the return of his deposit. He stated that the property had been misrepresented to him and that defendant had failed to clear the title as required by the contract. On December 19th plaintiff wrote defendant that he would take title and pay the balance of the purchase price as soon as the easement had been cleared. Defendant, however, on December 27th cancelled the escrow and thereafter sold the property to a third party for $20,000. Early in January plaintiff indicated his willingness to purchase the property and shortly thereafter brought this suit for specific performance. The trial court entered judgment for defendant and plaintiff appeals.

Plaintiff's main contention is that the contract was still in effect when he sought to perform in January after defendant

had cancelled the escrow and arranged for the sale of the property to a third party. He bases this contention on the theory that time was not of the essence of the contract and that therefore defendant could not terminate his rights under it without giving him notice to perform within a reasonable time after the closing date, November 10th, fixed in the escrow instructions. This contention overlooks the fact, however, that plaintiff unconditionally repudiated the contract by his letters of November 28th. Even if it is assumed that under the terms of the escrow instructions plaintiff had a reasonable time to perform after November 28th, his repudiation on that date if acted upon by defendant before it was retracted, would excuse performance on defendant's part and make plaintiff's repudiation a total breach of contract. (*Gold Min. & Water Co.* v. *Swinerton*, 23 Cal.2d 19, 29 [142 P.2d 22] ; see, Restatement, Contracts, §§ 280, 318, 319; Civ. Code, § 1440.)

█ Although plaintiff made various oral proposals to continue with the purchase on terms other than those provided in the contract, he did not unconditionally withdraw his repudiation until after defendant, in reliance thereon, had sold the property to another. Plaintiff's letter of December 19th expressed willingness to perform the contract only after the easement held by the water and power department had been abandoned. The escrow instructions provided, however, that the title should be subject to easements of record. There was evidence that plaintiff read the instructions and was informed of the easement at the time he signed them. Since his letter of December 19th contained a condition with respect to the clearance of the easement that he had no right to impose, it did not constitute a withdrawal of the earlier repudiation. (*Steelduct* v. *Henger-Seltzer Co.*, 26 Cal.2d 634, 646 [160 P.2d 804] ; *Alderson* v. *Houston*, 154 Cal. 1, 14 [96 P. 884].) Accordingly, the judgment must be affirmed insofar as it denies plaintiff specific performance or damages for breach of contract.

The question remains whether plaintiff is entitled to the return of any part of his down payment. Since defendant resold the property for $2,000 more than plaintiff had agreed to pay for it, it is clear that defendant suffered no damage as a result of plaintiff's breach. If defendant is allowed to retain the amount of the down payment in excess of its expenses in connection with the contract it will be enriched and plaintiff

will suffer a penalty in excess of any damages he caused. Under our recent holdings in *Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367], and *Baffa* v. *Johnson*, 35 Cal.2d 36 [216 P.2d 13], plaintiff could recover that excess under section 3275 of the Civil Code, if his breach was neither wilful, fraudulent, nor grossly negligent. The trial court found, however, on substantial evidence, that plaintiff's breach was wilful. It is necessary to consider, therefore, the question left open in the Baffa case, namely, whether a vendee under such circumstances may recover the excess of his part payment over the damage he caused the vendor.

As was pointed out in the Baffa case, if the right to restitution rests solely on the provisions of section 3275, a vendee who has been guilty of a wilful default must be denied relief. We have concluded, however, that the damage provisions of the Civil Code, together with the policy of the law against penalties and forfeitures provide an alternative basis for relief independent of section 3275.

"Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefits as he may have conferred on the other party by part performance. . . . A satisfactory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover —to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury to the defendant who has agreed only to pay for full performance. On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. The mores of the time and place will often determine which policy will be followed. But the second of these opposing policies has steadily increased in favor in recent years." (5 Williston on Contracts [rev. ed.] § 1473, p. 4118.)

In adopting a rule allowing restitution to the defaulting vendee the Supreme Court of Utah stated:

"The vital question to be determined is: What is the correct measure of damages in a case of this kind? Shall we apply the rule of compensatory demages, or is it a case in which punitive damages should be allowed? Upon what principle can punitive damages or damages in excess of compensa-

tion for the injury done be justified in the case at bar? These are questions that appeal both to the judgment and conscience of the court. . . .

"The rule contended for by respondent, carried to its logical sequence, would forfeit every dollar paid by appellant and still leave respondent in possession of the land even if appellants had paid the last installment but one, and then defaulted. In answer to this, it may be said that such is not the case at bar. But where are we going to draw the line?" (*Malmberg* v. *Baugh*, 62 Utah 331, 340, 345 [218 P. 975]; see, also, McCormick on Damages, § 153, p. 616; Corbin, *The Right of a Defaulting Vendee to the Restitution of Instalments Paid*, 40 Yale L. J. 1013.)

The failure of courts adopting a contrary viewpoint to recognize that they are permitting unjustifiable penalties for breach of contract has led to the comment that "The law, while looking with righteous abhorrence on forfeitures, and washing its hands of their enforcement, after the manner of Pontius Pilate, yet has been reluctant to intervene with affirmative relief or to formulate any consistent principle condemning the validity of cut-throat provisions which in their essence involve forfeitures. Although the law will not assist in the vivisection of the victim, it will often permit the creditor to keep his pound of flesh if he can carve it for himself." (Ballantine, *Forfeiture for Breach of Contract*, 5 Minn.L. Rev. 329, 341.)

To permit what are in effect punitive damages merely because a party has partially performed his contract before his breach is inconsistent both with section 3294[1] of the Civil Code limiting the right to exemplary damages and sections 1670[2] and 1671[3] dealing with liquidated damages. "A penalty need not take the form of a stipulated fixed sum; any

---

[1] "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

[2] "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

[3] "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.'' (*Ebbert* v. *Mercantile Trust Co.,* 213 Cal. 496, 499 [2 P.2d 776].) Such penalties cannot reasonably be justified as punishment for one who wilfully breaches his contract. ▇ Not only does section 3294 of the Civil Code express the policy of the law against the allowance of exemplary damages for breach of contract regardless of the nature of the breach (*Chelini* v. *Nieri,* 32 Cal.2d 480, 486 [196 P.2d 915]), but if a penalty were to be imposed it should bear some rational relationship to its purpose. A penalty equal to the net benefits conferred by part performance bears no such relationship. It not only fails to take into consideration the degree of culpability, but its severity increases as the seriousness of the breach decreases. Thus a vendee who breaches his contract before he has benefited the vendor by part performance suffers no penalty, whereas one who has almost completely performed his contract suffers the maximum penalty.

Moreover, to deny the remedy of restitution because a breach is wilful would create an anomolous situation when considered with section 3369 of the Civil Code. That section provides that ''Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . .,'' and precludes the court from quieting the vendor's title unless he refunds the excess of the part payments over the damage caused by the vendee's breach. (*Baffa* v. *Johnson,* 35 Cal.2d 36, 39 [216 P.2d 13] ; *Barkis* v. *Scott,* 34 Cal.2d 116, 121 [208 P.2d 367], and cases cited.) Unless the same rule is adopted when the vendee seeks restitution, the rights of the parties under identical fact situations will turn on the chance of which one first seeks the aid of the court.

▇ In *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199], the court stated that on the vendee's default the vendor could stand on his contract and retain both the land and any payments that had been made. That statement was made without reference to sections 3275, 3294, and 3369 of the Civil Code. It is probable that these code sections were not invoked in the Glock case and similar cases because the vendee was unable to prove that the vendor's retention of both the land and payments would result in the imposition of punitive damages. (See *Barkis* v. *Scott, supra,* 34 Cal.2d 116, 121.) In the present case, however, denial of restitution would result in the imposi-

tion of punitive damages, and the foregoing sections may therefore be invoked.

The provision of the contract providing that on plaintiff's default defendant could retain the down payment cannot be enforced as a valid clause providing for liquidated damages. ██ Although such a provision in a contract for the sale of real property is presumptively valid, if the down payment is reasonable in amount (*Wright* v. *Rodgers*, 198 Cal. 137, 142-143 [243 P. 866] ; Civ. Code, § 3387), when as in this case the evidence establishes that it would not "be impracticable or extremely difficult to fix the actual damages" (Civ. Code, § 1671), such a provision may not be enforced as one for liquidated damages. (Civ. Code, § 1670; *Wright* v. *Rodgers, supra*, 198 Cal. 137, 144; see, also, *Petrovich* v. *City of Arcadia,* 36 Cal.2d 78, 85 [222 P.2d 231].)

Since a commission of $900 was retained by the broker from the down payment it is clear that defendant received from plaintiff at most $1,100. Defendant contends, however, that there were other expenses incurred in connection with the escrow that reduced the amount of the down payment received. Since the trial court erroneously concluded that plaintiff could recover no part of his down payment, no finding was made as to the fraction that accrued to the net benefit of defendant. Accordingly, a new trial limited to that issue is appropriate. (See, *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 801 [197 P.2d 713].)

The judgment is reversed insofar as it denies plaintiff restitution of any part of his down payment and the trial court is directed to retry the issue of the amount thereof to which he is entitled. In all other respects the judgment is affirmed. Each party is to bear his own costs on this appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

SCHAUER, J.—I would affirm the judgment in its entirety.

Respondent's petition for a rehearing was denied May 24, 1951. Schauer, J., voted for a rehearing.