[Civ. No. 9952.   Third Dist.   Jan. 13, 1961.]

WILLIAM D. KAY et al., Respondents, v. FREDERICK W. KAY et al., Defendants; MARIAN PATRICIA KAY, Appellant.

Mathews & Traverse for Appellant.

Mitchell & Henderson for Respondents.

WARNE, J. pro tem.*—This is an appeal by defendant Marian Kay from a judgment and decree in favor of plaintiffs, quieting title to certain real property and ordering appellant to quit and vacate the premises.

On February 28, 1952, the plaintiffs entered into a written agreement whereby they agreed to sell and the defendants (appellant and her husband) agreed to buy the real property in question for the sum of $7,750 together with interest on deferred payments. The agreement provided for, and defendants made, a down payment of $920. The balance of the price, that is $6,830, was payable in monthly installments of not less than $50 per month, said payments to be made on the 10th of each and every month. The agreement provided that the monthly payments should first be made to the Bank of America to retire the mortgage held by the bank on the prop-

---

*Assigned by Chairman of Judicial Council.

erty in the sum of $1,787.83, together with interest at the rate of 6 per cent per annum, until said debt was fully paid. Thereafter, the monthly payments were to be made to the plaintiffs. Defendants further agreed to pay all state, county and city taxes assessed against the property, and to keep the improvements insured for at least $6,000. The agreement further provided that if the defendants failed for a period of three months to pay any of the sums agreed to be paid, or failed to comply with any of the covenants, then the plaintiffs should be released from all legal or equitable obligations to convey the property, and the buyers would forfeit all rights thereto and any and all payments theretofore paid would be considered as rent for the use and occupancy of the premises. Time was made the essence of the agreement.

The record, in addition, shows the following uncontroverted facts: That the defendant, Frederick W. Kay is the plaintiffs' son; that plaintiffs purchased the real estate in 1950 to supply a home for their son and appellant, Marian Patricia Kay; that Marian Patricia Kay and Frederick Kay were married and moved into the premises in 1950, paying rent, and that this rent was credited as a down payment under the agreement of February 1952; that, although under this agreement the mortgage held by the Bank of America was to be paid off at the rate of $50 per month, it was actually paid off at a lesser rate; that for a portion of the time before the mortgage was liquidated, the premises were rented out by defendants to third parties at a monthly rental of $85 per month; that plaintiffs collected these rents but paid only $30 per month to the bank, remitting the balance to defendants; that after the bank was paid off in April 1956, defendants paid no more and no demand for payment was ever made by plaintiffs of appellant or her husband; that on March 6, 1958, notice of forfeiture was sent; that during the interval respondents and appellant were on friendly terms; that in February of 1958, appellant commenced an action for divorce, at which time she and her small daughter (respondents' granddaughter) alone were living on the property; that notice of default with demand for possession was served on March 6, 1958; and that on March 13, 1958, appellant gave a return notice to respondents setting forth the fact that she did not know the exact amount due, and offering to tender that amount, whatever it was, in exchange for a deed. Respondents made no reply to this offer but immediately thereafter brought this action to quiet title to the property in question.

The trial court, among other things, found that defendants made the down payment of $920, and in addition thereto made payments to the Bank of America amounting to the sum of $1,787.83, i.e., the amount which appellant and her husband owed to the Bank of America; that on April 4, 1956, there remained due to respondents $5,743.36; and that appellant and her husband failed to make the payment due on May 10, 1956, and no payments were made or tendered either upon the principal or upon the interest due thereafter. The trial court further found that the defendants had failed to pay the 1958-1959 taxes assessed against the property and had failed to obtain insurance upon the premises; that on March 6, 1958, plaintiffs notified defendants in writing of their default in compliance with the terms of the agreement and gave notice to them to vacate the premises; that since April 6, 1958, appellant and her husband have willfully withheld the premises from plaintiffs; that they "at no time in good faith" have made a demand for a statement of sums due; that no evidence had been produced by appellant or her husband to explain or justify their breach of contract and their default in making payments as required; and that appellant and her husband have no interest in the property. Upon these findings the trial court entered judgment decreeing that appellant forfeit and vacate the premises and that respondents' title to the property be quieted.

Appellant contends that the respondents acquiesced in the failure of appellant and her husband to make payments as called for in the contract and that necessarily, under the uncontroverted facts, the respondents waived their right to declare a forfeiture.

Appellant pleaded as a separate defense that respondents had waived the requirement that payments be made in the time and manner as specified in the contract and asserted that she was ready, willing and able to make payment on the balance due of the purchase price. No specific finding was made responsive to the issue raised by this plea. Nevertheless, we are asked by respondents, since no request for further findings was made, to consider that the court impliedly found against these allegations of waiver.

We think that there is such an implied finding and that it is supported by the record. As noted above, the trial court found that no evidence had been produced by the defendants to explain or justify their breach. "Whether there has been

a waiver is usually regarded as a question of fact to be determined by the jury, or by the trial court if there is no jury. Although some authorities say waiver is a mixed question of law and fact, each case depending on its own circumstances, the only question of law that can be involved must relate to the legal definition of waiver. For example, the jury might be instructed that, as a matter of law, a waiver must be voluntary, and that it implies a knowledge of the right claimed or thing waived. Whether it actually was voluntary, and whether the party had knowledge of the right or thing waived, are questions of fact to be submitted to the jury, unless but one inference can be drawn from the evidence. Where different inferences might fairly and reasonably be drawn, the choice made in the trial court, in the absence of an abuse of discretion, is binding on appeal.'' (51 Cal.Jur.2d, Waiver, § 9.) ██ ''The question of waiver is a question of fact, and when supported by sufficient evidence to justify the inference of waiver is binding upon this court.'' (*Kerr* v. *Reed,* 187 Cal. 409, 414 [202 P. 142] ; see also *French* v. *Freeman,* 191 Cal. 579, 590 [217 P. 515] ; *Hefferan* v. *Freebairn,* 34 Cal.2d 715, 722 [214 P.2d 386].) ██ ''To constitute a waiver it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an *actual intention to relinquish it,* or conduct so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that it has been relinquished.'' (51 Cal.Jur. 2d, Waiver, § 3.) (Emphasis added.) ██ '' '*Waiver always rests upon intent.* Waiver is the intentional relinquishment of a known right after knowledge of the facts.' [Citation.] It implies 'the intentional forbearance to enforce a right.' '' (*Wienke* v. *Smith,* 179 Cal. 220, 226 [176 P. 42].) (Emphasis added.)

██ We have here a long lapse of time between the first default and the declaration of default and demand for possession, but mere lapse of time does not amount to a waiver. (*Ross* v. *Gentry,* 94 Cal.App. 742, 744 [271 P. 1098].) ██ In addition, we have parents who purchased the property for their son and daughter-in-law and who had never made a demand for payment. But it seems to us that the trial court might, in these additional facts, find an excuse for the long period of silence and inaction without finding an intentional waiver of the right to declare a contract terminated for breach; that is, forbearance rather than the intentional relinquishment of the contract right.

We feel that we do not have in this record a situation where we can say, as a matter of law and after adverse findings of the trial court, that there had been a waiver.

Notwithstanding the foregoing, there are other considerations presented by the record in this case. Plaintiffs' action is one seeking to quiet title to real property. ■ Such an action to terminate a contract for the sale of real property is essentially a strict foreclosure. (*Warner Bros.* v. *Freud,* 138 Cal. 651 [72 P. 345]; *Scarbery* v. *Bill Patch Land & Water Co.,* 184 Cal.App.2d 87, 103 [7 Cal.Rptr. 408].) ■ Appellant offered to pay the full purchase price once the exact amount due had been determined and she asked for a decree that she might do so. The court found that she knew the amount unpaid, but there is no evidence to support that finding. Here appellant was separated from her husband and the granting to her of an interlocutory decree of divorce was shown without dispute. Here the matter of payment was primarily a matter under the control of the husband through his right to control and make disposition of the community assets. Here it was shown without dispute that the tax statements had been sent to the respondents, who paid them directly. Further, appellant testified that she did not know what the status of the purchase contract was. Under these circumstances we feel that it was an abuse of discretion for the trial court to deny appellant's request that it fix the amount due, including any special damages that respondents may have suffered by the delay. The court abused its discretion in its failure to fix a reasonable time within which the appellant could pay out and take a deed or be strictly foreclosed. ■ In *Petersen* v. *Ridenour,* 135 Cal.App.2d 720, 727-728 [287 P.2d 848], the court said:

"It is fundamental that equity, having taken jurisdiction, will grant complete relief. . . .

"The averment of an offer to pay any arrearages found to exist invoked another line of applicable cases, having to do with termination of a vendee's rights at the suit of the vendor. A quiet title action brought to terminate a contract for sale of realty is essentially a strict foreclosure. [Citing cases.] ■ And in 'such case the court finds the amount unpaid, and decrees that it be paid on or before a day stated, and upon failure to make the payment that defendant's equity be foreclosed' [citing cases], . . ." That this is a proper practice is also held in *Keller* v. *Lewis,* 53 Cal. 113, 118; *Southern*

*Pacific R. R. Co.* v. *Allen,* 112 Cal. 455, 462 [44 P. 796]; *Odd Fellows' Sav. Bank* v. *Brander,* 124 Cal. 255, 257 [56 P. 1109]; *Cross* v. *Mayo,* 167 Cal. 594, 605 [140 P. 283].

The facts proved in this case demand an application of this equity rule and the court erred in giving effect to respondents' forfeiture of appellant's interest without consideration of this principle.

In this case there was evidence which without dispute fixed the value of the premises being purchased at between $12,000 and $17,000. The amount still unpaid was something over $5,000 and with the accumulated interest, which would have to be charged for the delay, the total amount would be approximately $7,000. The forfeiture, then, which is declared by the judgment on appeal, is most substantial. In *Keller* v. *Lewis, supra,* which is a leading case on the equitable principle under discussion, the court said:

"The decree declares the money already paid on the contract—and all rights of defendants in and to the lands—forfeited.

"It is a *universal rule* in equity never to enforce either a penalty or forfeiture. [Citation.] On the contrary, equity frequently interposes to prevent the enforcement of a forfeiture at law. In the view of a Court of Equity, in cases like the present, the legal title is retained by the vendor as security for the balance of the purchase money, and if the vendor obtains his money and interest he gets all he expected when he entered into the contract, True, he is not bound to wait indefinitely after the failure of the purchaser to comply with the terms of his agreement. If the payments are not made when due, he may, if out of possession, bring his ejectment and recover the possession; but if he comes into *equity* for relief, his better remedy, in cases of persistent default on the part of the vendee, is to institute proceedings to foreclose the right of the vendee to purchase; the decree usually giving the latter a definite time within which to perform. [Citation.]

"Under the circumstances of this case, as presented by the pleadings and evidence, the decree of the District Court should have fixed a day within which the defendants should pay the balance due upon the contract, and costs, etc., or be forever foreclosed of all right or interest in the lands, or to a conveyance thereof."

In that case the court reversed the judgment and remanded with directions to the court below to render a decree in accordance with the views therein expressed. Applying the rule of

equity stated in the above cases, we are of the opinion that it was an abuse of discretion for the trial court, sitting as a court of equity in this case, to have failed to follow the equitable rule as requested by appellant.

The judgment is reversed and the cause is remanded with directions to the trial court to render a decree in accordance with the views herein expressed.

Van Dyke, P. J., and Peek, J., concurred.