[Civ. No. 53503. First Dist., Div. Three. Dec. 30, 1983.]

REX M. BARTLEY et al., Plaintiffs and Respondents, v.
JACK J. KARAS et al., Defendants and Appellants.

COUNSEL

Richard S. Wright for Defendants and Appellants.

Michael R. Farrah for Plaintiffs and Respondents.

OPINION

**BARRY-DEAL, J.**—In this action to quiet title to real property, respondents Rex M. Bartley and John Beale, purchasers at a foreclosure sale, sought to terminate the equitable interest of appellants Jack J. Karas and Frank V. Tharp, vendees under an installment sale contract. Appellants challenge the judgment in respondents' favor after a nonjury trial on the ground that the trial court erred by terminating their rights as defaulting vendees without affording them an opportunity to cure their default and reinstate the contract. We reverse.

## Facts

Under the instalment contract, executed July 7, 1970, and never recorded, appellants agreed to buy a home at 305 Wheeler Avenue, San Francisco, for $15,000. The terms of payment called for a down payment of $1,500, with the balance and interest payable in 210 monthly instalments of approximately $160 each. Standard time of essence and forfeiture clauses governed the instalment payments.

The sellers under this contract, Frank and Arlene Mays, had previously encumbered the property with deeds of trust recorded in 1965 and 1969. The first deed of trust secured an original indebtedness of $14,000, while the second deed of trust secured an original indebtedness of $3,493.71.[1]

On the same day the contract was executed, the sellers executed a promissory note for $900 in favor of Lawrence D. Virzi, their real estate agent, as payment of his commission for negotiating the sale. This note was secured by a third deed of trust to the property. Around this time Virzi was also assigned the beneficiary's interest in the second deed of trust.

The sellers authorized Virzi to collect the instalment payments from appellants as they fell due and, upon full payment, to deliver an executed grant deed to appellants. Virzi was also directed to use the instalment payments to pay taxes on the property and make the periodic payments on the three secured notes.

Appellants went into possession of the property, made payments, and expended an estimated $20,500 on improvements. They began to default on their payments in March 1977. Virzi notified them, in a letter dated July 27, 1977, that their continued default "jeopardize[d] [their] ownership of the property." He warned them, by a letter sent June 10, 1978, that "foreclosure [would] be started on the property" if they failed to cure their arrearage of $1,640 within 10 days. Appellants tendered $1,300 on August 26, 1978, and Virzi accepted this partial cure of their default after they agreed to make double payments thereafter. Appellants made no further payment, although Virzi, by a letter dated December 9, 1978, again stated that "foreclosure proceedings [would] begin" if they failed to pay, within 10 days, at least $656 out of their existing arrearage of $1,476. During their default Virzi sometimes used his own funds to pay taxes and periodic payments on the note secured by the first deed of trust.

---

[1]Respondents paid off the note secured by the second deed of trust in 1979 for $9,860, by which time the outstanding debt secured by the first deed of trust had been reduced to approximately $8,000.

On July 9, 1979, Virzi began a nonjudicial foreclosure proceeding against the sellers by recording a notice of default on the note secured by the third deed of trust. The trustee of the third deed of trust sent copies of this notice by certified mail to appellants and their attorney of record. The trustee similarly mailed copies of the notice of trustee sale on October 22, 1979.

At the trustee sale, held November 27, 1979, respondents acquired title to the property under the third deed of trust, through their successful bid of $5,860. Thereafter, on January 25, 1980, they began efforts to obtain possession and quiet their title against appellants.

During the trial, in August 1980, Virzi estimated that appellants' arrearage by that time was $3,936. Afterwards, while respondent Bartley was testifying, appellants tendered a check for $4,000 to cure the default and requested reinstatement. The trial court sustained an objection to this tender and request, and Bartley never responded.

### Discussion

We first address respondents' contention that appellants' rights under the contract were terminated by the trustee sale. They rely on the principle that a purchaser at such a sale takes title free and clear of any rights of the trustor, or anyone claiming under or through the trustor, and of all other subordinate interests. (See, e.g., *Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605, 613 [39 Cal.Rptr. 647].)

The evidence does not support their contention that the installment contract was subordinate to the third deed of trust. Although the contract was never recorded, the evidence is undisputed that both Virzi and respondents had actual notice of its existence. Accordingly, the third deed of trust cannot be deemed superior under Civil Code section 1214 due to its recordation. (Civ. Code, § 1217; *Gribble* v. *Mauerhan* (1961) 188 Cal.App.2d 221, 227-228 [10 Cal.Rptr. 296]; 2 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1977) § 11:3, p. 10; *id.,* (1983 supp.) § 11:3, p. 3; cf. *Phillips* v. *Menotti* (1914) 167 Cal. 328, 330 [139 P. 796].)

Nor is the contract subordinate as one junior in time to the third deed of trust. The evidence supports the court's finding that the two instruments were executed contemporaneously.[2] Where a deed and contract are made simultaneously and are so connected that they may be regarded as one

---

[2]For this reason we do not consider the possible illegality of the third deed of trust as a *subsequent* encumbrance prohibited by Civil Code section 2985.2. (See Civ. Code, § 1667; *C. I. T. Corp.* v. *Breckenridge* (1944) 63 Cal.App.2d 198, 200 [146 P.2d 271].)

transaction, they should be held to take effect in such order as will best carry out the intent and secure the rights of all parties. (*Biddle Avenue Realty Corp.* v. *Commissioner of Int. Rev.* (6th Cir. 1938) 94 F.2d 435, 436.) In this case there is no evidence as to the parties' intent, but clearly their respective rights are best secured by holding that the title under the third deed of trust, securing Virzi's $900 commission, is subject to appellants' rights under the contract. Moreover, the trial court concluded that respondents succeeded to the sellers' rights under the contract, and it necessarily follows that they also succeeded to the sellers' contract obligations to appellants.

We turn to appellants' arguments. First, they assert that respondents waived their right to terminate the contract. (See *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 119 [208 P.2d 367].) They cite testimony indicating that Virzi often accepted late payments up to August 1978, and that neither he nor respondents ever formally notified appellants that the time of essence clause would be strictly enforced, or that the contract had been terminated by their subsequent default. Appellants reason that this evidence shows a waiver of respondents' right to declare a forfeiture and terminate the contract in the present proceeding. (See *McLane* v. *Van Eaton* (1943) 60 Cal.App.2d 612, 616 [141 P.2d 783].)

Appellants have themselves waived their right to review of this question. The trial court made no express finding on waiver. As the record fails to show that appellants raised this defense by plea or argument, there is no basis to assume that the court considered the question and impliedly found in respondents' favor. ■ Waiver is a factual question (*Kay* v. *Kay* (1961) 188 Cal.App.2d 214, 218 [10 Cal.Rptr. 196]) and cannot be raised for the first time on appeal. (*Wienke* v. *Smith* (1918) 179 Cal. 220, 225 [176 P. 42].)

Next, appellants challenge the trial court's conclusion that respondents were not guilty of unclean hands. They point to evidence indicating that respondents entered an agreement to pool their assets and increase their bidding power at the trustee sale. After doing so, they did not disclose their agreement, but took turns bidding so as to "throw the other bidders off," particularly Virzi. Appellants claim that respondents thereby obtained title to the subject property in violation of Civil Code section 2924h, subdivision (f), and came into this proceeding with unclean hands.

Assuming that respondents' actions did constitute misconduct at the trustee sale, this alone does not entitle appellants to the defense of unclean hands. ■ For this doctrine to be invoked, the alleged misconduct must pertain to the subject matter involved and affect the equitable relations be-

tween the litigants. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 728 [39 Cal.Rptr. 64].) ▮ A party may have relief in connection with a transaction itself untainted although his original title may have been tainted by misconduct (*id.,* at p. 729), as where such misconduct does not prejudice the rights of the person against whom relief is sought. (*Tinney* v. *Tinney* (1963) 211 Cal.App.2d 548, 555 [27 Cal.Rptr. 239].)

This action involved appellants' rights to the subject property under a contract, as against respondents' rights as successors to the sellers' title. Appellants have not demonstrated that their rights were in any way affected or prejudiced by respondents' conduct at the trustee sale. They did not attempt to bid at the sale. As previously noted, the sale itself did not terminate or otherwise affect their interests. Appellants suggest that they were prejudiced because the final bid might otherwise have been higher, and thus the excess proceeds of the sale awarded to them might have been greater. The evidence does not support this suggestion. Virzi, the only other bidder who testified, said that he was unwilling to spend more than his final unsuccessful bid, although he had funds in excess of respondents' successful bid.

▮ Appellants next contend that the court erred in its conclusion that their default was wilful or grossly negligent, precluding relief under Civil Code section 3275. In their view, the evidence shows only that they defaulted due to insufficient funds, and they reason that this alone does not amount to wilful or grossly negligent conduct.

Their argument is unpersuasive. Appellants had the burden of proving that their default was neither wilful nor grossly negligent. (*MacFadden* v. *Walker* (1971) 5 Cal.3d 809, 813 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1]; *Barkis* v. *Scott, supra,* 34 Cal.2d 116, 120; *Hayward Lbr. & Inv. Co.* v. *Const. Prod. Corp.* (1953) 117 Cal.App.2d 221, 228 [255 P.2d 473].) They testified that they failed to make payments at times because they were unable to raise sufficient funds, and at other times because they were waiting for Virzi to give them the payoff price so that they could borrow this sum and obtain title. The latter excuse is patently insufficient, particularly in light of other evidence that appellants never attempted to obtain a loan, although Virzi on occasion gave them information necessary for this purpose.

Lack of funds alone is also insufficient to meet the burden imposed by Civil Code section 3275. There must be some additional showing that this cause is not itself attributable to wilful or grossly negligent conduct, e.g., where the earning capacity of the party seeking relief has been unexpectedly

impaired by accident or illness. (*Scarbery* v. *Bill Patch Land & Water Co.* (1960) 184 Cal.App.2d 87, 94, 104-105 [7 Cal.Rptr. 408]; *Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325, 334-335 [263 P.2d 655].)

We find no error in the court's conclusion that appellants were not entitled to reinstate the contract pursuant to Civil Code section 3275.

■ Appellants also challenge the trial court's conclusion that they were not entitled to reinstatement as wilfully defaulting buyers, pursuant to the antiforfeiture policy applied in *MacFadden* v. *Walker, supra,* 5 Cal.3d 809.

The rule announced in *MacFadden* is: a wilfully defaulting buyer who is not entitled to relief under Civil Code section 3275 may nonetheless be able, in proper cases, to obtain specific performance of an instalment land sale contract, in accordance with the antiforfeiture policy recognized in *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 19-22 [230 P.2d 629, 31 A.L.R.2d 1]. (*MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 813-816; see also *Kosloff* v. *Castle* (1981) 115 Cal.App.3d 369, 373-376 [171 Cal.Rptr. 308].)

The application of the *MacFadden* rule to the case before us is questionable, because appellants failed to seek specific performance of the contract. A decree of specific performance compels the *full* execution of a contract, and those who seek it must fully perform on their part. (Civ. Code, § 3392.) Here, appellants merely requested reinstatement of the partially executed contract, tendering only the amount necessary to pay the estimated arrearage. (See *Dunner* v. *Hoover* (1941) 43 Cal.App.2d 753, 758 [111 P.2d 737].) The issue then is whether *MacFadden* applies to a wilfully defaulting buyer who seeks only reinstatement, as distinguished from reinstatement incident to specific performance.

In cases decided before *MacFadden,* courts stated that a defaulting buyer could obtain reinstatement under Civil Code section 3275, but otherwise could obtain only restitution. (*Beck* v. *Combs* (1959) 169 Cal.App.2d 583, 587 [337 P.2d 505]; *Crofoot* v. *Weger* (1952) 109 Cal.App.2d 839, 842-843 [241 P.2d 1017]; see *Barkis* v. *Scott, supra,* 34 Cal. 2d 116, 121-123.) More recently, at least one commentator has argued that the antiforfeiture policy relied on in *MacFadden* also justifies awarding reinstatement to wilful defaulting buyers who cannot obtain relief under Civil Code section 3275. (1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975), *supra,* pt. 2, § 5:31, pp. 162-163, fn. 1.)

However, the antiforfeiture policy applied in *MacFadden* simply provided the justification for use of an established equitable remedy, "carefully

hedged around with protections to the person against whom it is invoked."[3] (*MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 815.) Thus, for example, the seller would be assured of receiving the full benefit of the bargain despite the buyer's previous wilful default. (Civ. Code, §§ 3386, 3392.)

By contrast, there appears to be no established remedy of reinstatement other than that provided under Civil Code section 3275. Under that section a seller is given some protection, at least, by a judicial determination that the defaulting buyer acted reasonably and in good faith. (See *Hopkins* v. *Woodward* (1932) 216 Cal. 619, 622 [15 P.2d 499].) But if a court awards simple reinstatement to a wilful or grossly negligent defaulting buyer, the seller is assured of little more than the prospect of future litigation.

Before *MacFadden,* where a seller brought a quiet title action to terminate a defaulting buyer's contract rights, and the buyer offered to pay the arrearage as a defense to the action, the typical remedy afforded was not reinstatement per se.[4] Instead, courts held that "[t]he averment of an offer to pay any arrearages . . ." invoked a line of cases beginning with *Keller* v. *Lewis* (1878) 53 Cal. 113, 118. (*Petersen* v. *Ridenour* (1955) 135 Cal.App.2d 720, 728 [287 P.2d 848]; see also *Kay* v. *Kay, supra,* 188 Cal.App.2d 214, 219-220.) In such cases, where the circumstances indicated that it would be " 'in consonance with equity,' " courts issued a conditional decree terminating the contract and quieting title in the seller's favor, unless, within a reasonable time set by the court, the buyer tendered a determined amount representing the full balance owed plus any damages for the default. (*Ibid.*) Thus, the buyer was given one last chance to obtain title, while the seller was assured of either receiving the full benefit of the bargain or regaining clear title.

We conclude that it is this remedy, rather than simple reinstatement, which should in proper cases be extended to a wilfully defaulting buyer who seeks reinstatement rather than specific performance. Not only does it derive from the same antiforfeiture policy applied in *MacFadden* (see Comment (1932) 20 Cal.L.Rev. 194, 198), but, like specific performance, it affords adequate protection for the nondefaulting seller.

Of course, as with specific performance, there is only a discretionary right to this type of relief, depending upon the equities of the particular case.

---

[3]Similarly, in the case relied on by *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 813-814, the Supreme Court invoked the antiforfeiture policy to justify the equitable remedy of restitution. (*Freedman* v. *The Rector, supra,* 37 Cal.2d 16, 19-22.)

[4]Of course, reinstatement was permitted in *Barkis* v. *Scott, supra,* 34 Cal.2d 116, for a buyer who had substantially performed or had made substantial improvements, and who was also entitled to relief under Civil Code section 3275.

(Cf. *Kosloff* v. *Castle, supra,* 115 Cal.App.3d 369, 376.) It is undoubtedly proper where the buyer is entitled to relief under Civil Code section 3275. (*Scarbery* v. *Bill Patch Land & Water Co., supra,* 184 Cal.App.2d 87, 103-106.) It may also be proper where the seller's conduct contributed to the default and where there is some good faith, but imperfect excuse, for the buyer's conduct. (*Keller* v. *Lewis, supra,* 53 Cal. 113, 114-115; *Kay* v. *Kay, supra,* 188 Cal.App.2d 214, 216-221; *Petersen* v. *Ridenour, supra,* 135 Cal.App.2d 720, 725-730; see also *Cross* v. *Mayo* (1914) 167 Cal. 594, 596, 601-606 [140 P. 283]; *Kornblum* v. *Arthurs* (1908) 154 Cal. 246, 247-249 [97 P. 420]; *Southern Pacific R. R. Co.* v. *Allen* (1896) 112 Cal. 455, 459-460, 462 [44 P. 796]; cf. *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, 815-816.) Other important factors in favor of this remedy include substantial performance or substantial improvements made by the buyer before default. (*Ward* v. *Union Bond & Trust Company* (9th Cir. 1957) 243 F.2d 476, 477-478, 480-481.) In sum, the remedy should be equitable under the circumstances.

In this case, the trial court concluded that appellants' offer to pay arrearages was untimely and immaterial. It appears that, for this reason, it did not consider the possible application of the rule applied in *Petersen* v. *Ridenour, supra,* 135 Cal.App.2d 720. This was error prejudicial to appellants, for, to paraphrase what was said in that case, the offer to pay arrearages was both timely and material in the sense that it required the court to consider whether it would be equitable to issue a conditional decree affording appellants one last chance to obtain title. (*Id.,* at p. 728.) █ We therefore reverse the judgment and remand the cause for consideration of this issue.[5]

The judgment is reversed.

Scott, Acting P. J., and Feinberg, J., concurred.

---

[5]We note also that the trial court did not consider the issue of restitution. Even wilfully defaulting buyers have an unqualified right to restitution of any principal payments in excess of the seller's damages. (*Freedman* v. *The Rector, supra,* 37 Cal.2d 16, 19-23; see Civ. Code, § 3307; 1 Miller & Starr, Current Law of Cal. Real Estate, *supra,* pt. 2, § 5:30, pp. 158-161.) We direct the trial court to consider this issue on remand, if it determines that it would not be equitable to issue a conditional decree, or if appellants fail to comply with such a decree once issued.