[Civ. No. 13756. First Dist., Div. One. Oct. 6, 1948.]

D. L. DAVY et al., Appellants, v. ESTELLA E. OGIER et al., Respondents.

Morse & Richards and Stanley C. Smallwood for Appellants.

Granville T. Burke for Respondents.

BRAY, J.—Appeal by plaintiffs and cross-defendants from a judgment in favor of defendant and cross-plaintiff Estella E. Ogier, in an action brought to compel specific performance of an agreement to sell real property. One Huddleson, a tenant of the property under an unrecorded lease, was made a party defendant. Huddleson defaulted.

As to most of the facts there is no dispute. Defendant Ogier (hereafter referred to simply as defendant) owned a certain lot in Albany upon which was a store building. The upper floor was used as a residence. The lower floor, although built for store purposes, was leased under an unrecorded lease to Huddleson, who occupied it for residence purposes. W. J. Bowman acted as plaintiffs' agent throughout the entire transaction involved here. Bowman was a licensed real estate broker and also president of the Albany Federal Savings and Loan Association (hereafter, for brevity, referred to as the "loan company"). On March 20, 1945, Bowman called de-

fendant on the telephone and then on the 23d saw her at her home. The record is confused as to just what was said on each occasion, but the substance of the conversations was that Bowman inquired if the property was for sale, and if so, at what price. Defendant testified: "I told him I had an offer of $8500 for it and he said he thought that was a little high. I said I didn't know, it was just what somebody else had told me, some other realtor." He asked her if she would take less and she said she would consider $6,500. He later called her and stated that his client would pay $6,000 cash. When she said she would be interested in that price, he came to her home with a deposit receipt, in the usual form. This receipt was signed by Bowman as real estate agent, and set forth that there was received from plaintiffs $250 as a deposit on account of the purchase price of $6,000 for the property, describing it. The balance was to be paid "cash at the close of escrow, within thirty days. Seller agrees to deliver possession of the store portion of said building not later than forty (40) days from date hereof, subject to the right of the present tenant to exercise his option to purchase the above property. IT IS ALSO AGREED: First—That in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amount of said deposit shall, at the option of seller, be retained as liquidated and agreed damages. Second—That in the event the title to said property shall not prove merchantable and said seller shall not perfect, or be able to perfect, the same within a reasonable time from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder." Evidence of title was to be in the form of a title insurance policy of a certain title company. Time was made the essence of the contract. Defendant accepted the deposit and signed the following statement: "I agree to sell the above described property on the terms and conditions herein stated."

The most serious conflict in the evidence occurs with reference to the conversation concerning Huddleson's tenancy. Bowman claims that defendant told him there was a tenant in possession of the store portion under a lease, by the terms of which he had a first option to buy if she decided to sell, but, if he did not exercise his option, and she sold the premises, the lease would terminate on 30 days' notice to the tenant to vacate. Defendant admits telling Bowman of the tenant's option to

buy, but denies stating that there was any termination clause in the lease. (As a matter of fact, there was no such clause in the lease, which then had over two years to run.) Plaintiff D. L. Davy knew of the existence of the lease, because in 1944 he had tried to lease the store from defendant for a five-year period, and defendant then told him that the store was occupied and that she felt she should give the tenant first chance. On telling the tenant, Huddleson, of the situation, he agreed to lease it for three years. Defendant then notified Davy that the tenant had taken a lease for three years.

On March 27, the title company received an order from the loan company to search the title. April 2, the loan company sent the title company a letter enclosing a deed of trust in the sum of $4,000 from plaintiffs to it, and instructed the title company to record it when they could issue policy of title insurance in the sum of $6,000, "running in favor of Davy and wife to ourselves, showing title vested in the name of transferors and our deed of trust as a first record lien." After further instructions concerning other matters not pertinent here the letter stated: "Kindly phone the writer when you are ready to close and we will forward our check immediately." The letter was signed W. J. Bowman, president. This is the letter or commitment which plaintiffs contend complies with the requirement in the deposit receipt "cash at the close of escrow, within thirty days."

On April 17, plaintiffs sent the title company a letter enclosing a check for $1,750, a copy of the deposit receipt, and stating: "The balance of the purchase price, namely $4,000.00, will be remitted to you by the Albany Federal Savings and Loan Association upon your demand. You are authorized to close the escrow in accordance with the terms of the deposit receipt enclosed herewith when you are prepared to issue your policy of title insurance in the sum of $6,000, showing clear title vested in the names of D. L. Davy and Grace E. Davy, husband and wife, as joint tenants, and the deed of trust running in favor of Albany Federal Savings and Loan Association in the sum of $4,000.00 as a first and the only lien of record."

Defendant deposited with the title company a deed from herself to plaintiffs instructing it to record the deed upon collecting for her the sum of $5,750, balance of purchase price; taxes, insurance and rents to be prorated. The record does not disclose the date of the deposit of the deed, but it ap-

parently was about the middle of April. The title company would not have known of the unrecorded lease, were it not for the fact that defendant left it with them, apparently at the time she deposited the deed. The title company notified plaintiff Davy that to clear the record of the unrecorded lease it would be necessary for him to obtain a quitclaim deed from the tenant. Apparently plaintiffs or Bowman at first instructed the title company to show the title in plaintiffs subject to an unrecorded lease. The record is not clear upon this matter. However, on April 16, Davy instructed the title company to "hold until o. k. from Mr. Bowman" or until they heard from Davy "regarding the lease." This order was never revoked nor was any money ever deposited with the title company by or for plaintiffs.

About March 23, Bowman and Davy told the tenant that Davy had purchased the property, and asked how soon Davy might have possession. He stated that he was looking for a place and would vacate as soon as he could find one. On March 30, Bowman prepared a letter or notice to the tenant to the effect that if he did not exercise his option to buy he must vacate in 30 days. At Bowman's request defendant signed this letter and Bowman delivered it to the tenant. The tenant did not vacate and is still on the premises. Neither party did anything further concerning the lease or closing the escrow. Plaintiffs later brought this action to compel specific performance.

The court found, among other matters, that the purchase price of $6,000 was not fair, reasonable and adequate and that defendant was ready, able and willing at all times during the time provided in the deposit receipt to convey good title to the property and complied with her part of the agreement, but that plaintiffs failed to comply with their part of the agreement, specifically, that they failed to pay the balance of the purchase price as required—"cash at the close of escrow, within thirty days"—and that as time was the essence of the contract, such failure terminated their rights. These findings are attacked by plaintiffs as not supported by the evidence.

### No Evidence That The Price Is Unfair

There is no evidence to support the finding that the purchase price was not fair, reasonable, and adequate. Plaintiffs, on oral argument, concede this, and hence it is unnecessary to discuss the matter in detail. Were there any substantial

evidence to support this finding, the case would end, as it is elementary that in an action for specific performance plaintiff must allege and prove that the agreed price is fair, reasonable and adequate. (Civ. Code, § 3391, subds. 1 and 2.) Plaintiffs produced expert testimony to meet this issue. Defendant produced no evidence of value whatever. If the court disbelieved plaintiffs' witnesses, the most the court could have found was that the plaintiffs failed to prove the fairness of the transaction. There was no evidence to the contrary of that given by plaintiffs' witnesses and hence no basis for the finding that the price was unfair. This makes it necessary for us to consider whether the other findings are supported by the evidence.

### Plaintiffs Failed To Perform

■ Plaintiffs' claim to performance is based upon the contention that the so-called letter of commitment sent the title company by the loan company on April 2d was equivalent to payment in cash. They make a number of contentions in this respect, among others, that this letter is the equivalent of a check and that the authorities hold that payment by a check which is not objected to, meets the requirement that the payment be made in cash.[1] While we doubt that the letter in question can legally be held to constitute the equivalent of a payment in cash, we do not deem it necessary to determine the legal effect of this letter, for the reason that giving it all the effect claimed by plaintiffs, plaintiffs still have failed to prove performance of their contract. Without deciding whether the tender was the equivalent of cash, we will assume, solely for the purposes of this appeal, that the plaintiffs accompanied the letter of April 2d with $4,000 in cash. On April 16, plaintiff Davy instructed the title company not to close the escrow or pay out any money to defendant until the company received an o. k. from Bowman, or from him. The next day plaintiffs deposited the $1,750 balance of the purchase price with the title company, so that on the above assumption it then had the entire purchase price in its hands. It also had the deed from defendant to plaintiffs to be turned over to plaintiffs when the title company could pay the

---

[1]See *Albert* v. *Pearson*, 68 Cal.App. 657 [229 P. 998]. Plaintiffs also contend that the title company was their agent, and the failure of the title company to object to this form of alleged payment binds defendant. That parties dealing with a title company constitute it their agent is held in the Albert case and in *Greenzweight* v. *Title Guar. & Tr. Co.*, 1 Cal.2d 577 [36 P.2d 186], and others.

$5,750 to defendant. But the title company could not pay any sum whatever to defendant, because of Davy's instructions not to pay until further instructions from him or Bowman, which instructions never came. Time being of the essence, it was the duty of plaintiffs to see that defendant was paid the purchase price and the escrow closed within 30 days, unless some action of defendant prevented the close of the escrow. This brings us to the effect of the unrecorded lease, it being plaintiffs' position that until this lease was eliminated, the escrow could not be terminated and merchantable title granted by defendant.

However, under the particular circumstances of this case, plaintiffs, by their actions, waived this cloud on the title. Plaintiffs at all times knew of the existence of the lease. Plaintiff Davy knew of it when it was entered into, some months before the deposit receipt agreement was executed. Bowman was told of it by defendant, and the receipt refers to it, making the sale subject to the right of the tenant to exercise his option to buy. While Bowman claims its terms were misrepresented to him by defendant, defendant denies that, and in view of the court's findings we must assume as correct the defendant's statement that she did not misrepresent its terms.

Thus, while the language written into the deposit receipt by plaintiffs' agent Bowman refers only to the tenant's option to buy, the effect of the knowledge of Davy and Bowman of the lease, and the reference to a "present tenant" make the agreement one in which the plaintiffs agreed to buy subject to the existing rights of the tenant. These rights were set forth in his lease, of which lease plaintiffs had knowledge. Therefore, plaintiffs had no right to refuse to accept the title subject to that lease, and their instruction to the title company not to pay defendant within the 30 days was a violation of their agreement. Thus, defendant, at all times during the 30 days, was ready, able and willing to convey to plaintiff, on receipt of the purchase price, all the title she had agreed to convey.

Moreover, by their acts, plaintiffs waived any objection to the title by reason of the existence of the lease. On March 23, Davy and Bowman talked to the tenant and apparently were satisfied with his statement that he would vacate when he could find a place to which to move. The title company told Davy that to clear the title of the lease it would be necessary *for him* to obtain a quitclaim deed from the tenant. Defend-

ant deposited a copy of the lease with the title company. Had plaintiffs not known of the lease and its terms prior to that time (and the evidence shows they did, or at the very least, were put on notice thereof[1]), they then learned of its provisions and that it was not terminable. At no time did Davy or Bowman notify defendant that they were not satisfied with the title or that it was incumbent on her to do anything about the lease, other than sign the notice to vacate which Bowman prepared. That notice was signed March 30. The 30 days limited by the deposit receipt did not expire until April 23. Certainly it was the duty of the buyer to take a position within that 30 days as to the lease, that either he would accept the title subject to it, or he would not accept the title as merchantable, and therefore either terminate the agreement, or under its terms, require the seller to perfect the title within a reasonable time. Plaintiffs must have known on March 23 when they talked to the tenant that the lease was not terminable. However, while they notified the title company not to close the escrow, they took no position so far as defendant was concerned, about the lease other than to indicate by their actions that they were satisfied with the lease situation.

While ordinarily it is the duty of the seller of real property to clear any defects in the title before he can put the buyer into default, the situation here was different. The buyers knew of the lease; it is indirectly mentioned in the agreement; the buyers indicated to the seller by their actions that they were satisfied to make their own arrangements with the tenant, and at no time requested the seller to do anything about the lease other than sign a notice to vacate, which she did. The evidence amply supports the finding that the plaintiffs failed to perform their part of the agreement, and that defendant performed hers.

Subdivision 3 of section 3391 of the Civil Code provides that specific performance will not be enforced where the party seeking it has not substantially fulfilled his promise. Section 3392 provides: "Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party . . ." *Cockrill* v. *Boas*, 213 Cal. 490

---

[1]Actual possession of premises by a tenant under an unrecorded lease is sufficient to put a buyer upon inquiry as to the nature and extent of the occupant's claim. See cases collected in *Scheerer* v. *Cuddy.* 85 Cal. 270, at page 272 [24 P. 713].

[2 P.2d 774], holds that specific performance will not lie in favor of a vendee who fails to show that he deposited or tendered the balance of the purchase price within the time required by the contract.

It is interesting to note that while now the plaintiffs claim that the lease was a cloud on the title, they alleged in their complaint that after the 30th day of March, 1945 (the date of giving the notice to vacate) Huddleson "had and now has no interest" in the property. This allegation was admitted by failure to deny in defendant's answer. Thus, while now claiming that Huddleson's lease excused their nonperformance, the plaintiffs alleged that since approximately 23 days before their time to perform expired, Huddleson had no further interest in the property.

Inasmuch as plaintiffs failed to comply with the contract in the time agreed, specific performance cannot be compelled. Plaintiffs contend that as the court, pursuant to the allegations and prayer in their complaint, found that Huddleson now has no interest in the property, plaintiffs can now "waive the defect in title" (although they alleged that there was no such defect), and by such waiver be entitled to enforce specific performance of the contract, provided the court made an allowance to plaintiffs for the possession of the premises by the tenant since May, 1945. They rely on *Miller* v. *Dyer*, 20 Cal.2d 526 [127 P.2d 901, 141 A.L.R. 1428] ; *Smiddy* v. *Grafton*, 163 Cal. 16 [124 P. 433, Ann.Cas. 1913E 921] ; *Sobelman* v. *Maier*, 203 Cal. 1 [262 P. 1087], and other cases which hold that the vendee may enforce the contract with respect to whatever interest the vendor possesses, and may also receive compensation for the deficiency in the vendor's performance. But the principle of those cases is based upon performance by the vendee in accordance with the terms of the contract. Unless the vendee has so complied, or his failure to comply is excused because of the acts of the vendor, the principle does not apply. As pointed out heretofore, plaintiffs did not so comply, nor was their failure so to do excused because of the acts of the defendant.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.