[Civ. No. 53181. Second Dist., Div. Four. Nov. 27, 1978.]

JOSEPH V. NASH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERT R. EMMINGER et al., Real Parties in Interest.

## COUNSEL

Osborne, Kantor & Altagen, Robert S. Altagen, Plotkin & Saltzburg and Terrance B. Rodsky for Petitioners.

No appearance for Respondent.

Ambrose & Malat and Dean V. Ambrose for Real Parties in Interest.

## Opinion

**FILES, P. J.**—This is a mandate proceeding under Code of Civil Procedure section 409.4 to review a superior court order expunging a notice of lis pendens pursuant to Code of Civil Procedure section 409.1. The underlying superior court action was brought by petitioners to obtain specific performance of an agreement whereby the real parties in interest (hereinafter sellers) had agreed to sell residential real property to the petitioners (hereinafter buyers). The buyers, as plaintiffs in the superior court, had filed a notice of lis pendens. The superior court, after a hearing, ordered the notice expunged upon both of the statutory grounds specified in section 409.1, which are that the buyers failed to show to the satisfaction of the court, by a preponderance of the evidence, that (a) the action does affect the title to or right of possession of the real property, and (b) the action was commenced and prosecuted for a proper purpose and in good faith.

We interpret the first ground as indicating the trial court's finding that the buyers had not shown any right to the real property. The complaint unquestionably asserts that buyers have such a right. The issue for our review is whether the buyers sustained their burden of showing that the action was prosecuted for a proper purpose and in good faith, within the meaning of section 409.1, subdivision (b).

The petition for a writ of mandate contains certain documents from the superior court file and a narrative recital of the buyers' version of the facts. The sellers have supplied a more extensive collection of the papers which were before the trial court, including the writings which reflect the agreement of the parties. This evidence supports findings which vary substantially from the overview presented by the buyers.

The superior court heard the motion upon evidence consisting of documents, declarations under penalty of perjury, and portions of depositions. We first summarize that evidence.

On July 18, 1977, Laura Phillips (one of the parties here identified as buyers) signed a written "real estate purchase contract and receipt for deposit" whereby sellers agreed to sell to Phillips a described residence for a price of $200,000, contingent upon Phillips obtaining within 30 days a $160,000 loan at not more than 9¼ percent interest and for not less than 30 years. No money was paid as a deposit or otherwise. The sellers accepted the offer by signing the contract July 19.

The printed language in the contract included the following: "Escrow instructions signed by Buyer and Seller shall be delivered to the escrow holder within 3 days from the Seller's acceptance hereof and shall provide for closing within 45 days from the Seller's acceptance hereof, subject to written extensions signed by Buyer and Seller."

The printed contract also provided: "If Buyer fails to complete said purchase as herein provided by reason of any default of Buyer, Seller shall be released from his obligation to sell the property to Buyer . . . ."

On July 20, 1977, an escrow was opened at the Malibu Escrow Corporation, at which time Phillips paid into the escrow $1,000, and signed escrow instructions whereby she agreed to pay into escrow prior to September 5, 1977, $39,000 additional cash and $160,000 to come from a new loan, but subject to the contingency specified in the purchase contract. Sellers joined in the escrow instructions.

On August 24, 1977, an amendment to the escrow instructions was executed by petitioners Phillips and Nash, and by the sellers, agreeing that the title to the property was to be conveyed to Phillips and Nash, as tenants in common. An additional $4,000 was paid into the escrow by Phillips, to be credited to the purchase price.

On September 6, 1977, the parties entered into another written agreement which was addressed to the escrow holder as a modification of the previous instructions. This writing stated: "It is mutually agreed and you are hereby instructed by undersigned seller and buyer that the closing of this escrow is herewith extended to September 20, 1977 5 P.M. Iᴜ the event escrow is not closed by that time, escrow is to be immediately cancelled without any further instructions from any party and funds deposited herein by buyer are to be returned to buyer less all cancellation charges incurred herein."

The sellers deposited their deed in escrow and otherwise complied with all of the terms of their agreement.

On September 20, the buyers deposited $38,428 in the escrow, but no funds from a lender were paid in.

On September 21, the escrow holder sent a letter to the buyers stating that the escrow had been canceled in accordance with the September 6 agreement. Enclosed was a check to the buyers in the amount of $43,263, which was the full amount they had paid in less $165 retained for the escrow company's charges.

There is no competent evidence as to the reason for the failure of a lender to deposit the required $160,000. The buyers testified that they had made the necessary arrangements with Great Western Savings and Loan Company. In their complaint, they allege that a real estate broker owned the property adjacent to the subject property and desired to buy the subject property; that this broker owned and controlled Malibu Escrow Corporation; and that he conspired with the sellers and others to cause the escrow corporation to handle the escrow negligently "by failing to expeditiously obtain the necessary documents to consummate the transaction, where said documents were available to defendant Malibu."

Nash testified in his deposition that he believed the failure was due to "delay in getting the paperwork from the lender to the escrow," which Nash said was the responsibility of the escrow company.

Phillips' declaration stated that on September 21, 1977, "Great Western Savings and Loan was contacted and it was determined that they were unable to fund the loan by September 20, 1977 due to the fact that they had not received from the escrow company a title report on the subject property, an item which is necessary for the funding of any loan, until September 20, 1977."

No competent evidence was offered in support of this assertion, which is no more than a characterization of a hearsay report from an unidentified person.

The record reflects that the deposition of an officer of the escrow company was taken, and a portion of it was offered in evidence. That testimony contains nothing which would support the theory that the escrow company was either negligent or guilty of any other impropriety.

It does not appear that the escrow officer was asked when the title report was sent to Great Western. No document or other testimony from any one connected with Great Western was offered. Neither Nash nor Phillips claimed that they had ever signed a loan application, note, or other document pertaining to their claimed arrangement with Great Western.

Upon this record the trial court was not required to give credence or weight to the buyers' speculation that they would have completed the purchase but for some fault of the escrow company.

The Phillips declaration states that subsequent to September 20, she "attempted to complete the purchase," but there is no evidence that any one did anything resembling a tender of the missing $160,000. Nor was any evidence offered to indicate that any lending institution was then or ever willing to lend $160,000 to the buyers for payment over 30 years at 9¼ percent interest.

The buyers' attorney submitted a declaration attaching a Mailgram which he received from Malibu Escrow on September 22 which included the statement "Lorna Normandy of Great Western Savings and Loan has advised us this date that loan documents are ready for signature."

Apart from the hearsay character of this Mailgram, it is no indication that the loan referred to would be for the amount of $160,000 on terms and conditions which the buyers could and would meet. The trial court was not required to accept it as proof of matters not stated.

In *Pothast* v. *Kind* (1933) 218 Cal. 192 [24 P.2d 771], the Supreme Court affirmed a judgment quieting title of an owner against the claim of an intended buyer who had failed to deposit the full amount of the purchase price in the escrow. The court said at page 195: "It is well settled that performance must be made within the time limit of the escrow agreement. The failure to have the cash deposited with the escrow agent within the time limit provided by the agreement therefore entitled respondent to the relief given him by both judgments."

(Accord: *Evarts* v. *Johnston* (1949) 34 Cal.2d 6 [206 P.2d 633]; *Davy* v. *Ogier* (1948) 87 Cal.App.2d 835, 843 [198 P.2d 92]; *Major-Blakeney Co.* v. *Jenkins* (1953) 121 Cal.App.2d 325, 332, 337 [263 P.2d 655]; *Pitt* v. *Mallalieu* (1948) 85 Cal.App.2d 77, 86 [192 P.2d 24]; see *Barkis* v. *Scott* (1949) 34 Cal.2d 116, 122-123 [208 P.2d 367]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 63, p. 5286.)

■ Whether or not the parties have agreed that a buyer's right is conditioned upon performance on a specified date requires an interpretation of the contract between buyer and seller. Courts have recognized that the inclusion of language such as "time is of the essence" does not necessarily require a court to conclude that the buyer's rights would be so strictly limited. (See, e.g., *Katemis* v. *Westerlind* (1953) 120 Cal.App.2d 537 [261 P.2d 553].)

We are therefore obliged to construe the entire agreement of the parties here, as reflected in the three written instruments which they signed. Our duty is to determine what the parties intended as expressed in what they said. In so doing, we may consider the surrounding circumstances insofar as they are shown by the record. (See *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38-39 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].)

In the first writing, Phillips agreed to buy the property only if she could borrow $160,000 at not more than 9¼ percent interest to be repaid over a 30-year period. The agreement itself reflected uncertainty as to whether she could obtain such a loan. Buyer's escrow instructions contained the promise that payment would be made prior to September 5, 1977.

On August 24, Phillips brought in Nash as a buyer of an undivided half interest. Her declaration explains that she did so because Great Western had refused to lend her more than $140,000 on the property, and "the arrangement with plaintiff Nash was made to facilitate the 80% financing of the property."

On September 6, the buyers' performance was overdue. They had deposited only $5,000 in the escrow. On that date the parties entered into a written agreement giving the buyers until September 20 to perform, and expressly providing that if they did not perform by that date, their right to purchase would terminate.

The literal reading of the September 6 agreement is as clear as words can make it that performance by the buyers on or before September 20 was a condition precedent to any duty on the part of the sellers to convey the property. The reason for such an arrangement is apparent, and its purpose is manifestly reasonable. The sellers did not want their property encumbered indefinitely by a contingent agreement with parties whose ability to perform was at best questionable; and who, as a practical matter, were under no enforceable obligation to buy. As of September 6,

the buyers had what was in effect an option on the property, at no cost to themselves except a nominal escrow cancellation fee. Sellers reasonably did not want to continue in a situation in which Phillips and Nash could speculate on the market at the sellers' risk.

If it is legally possible for parties to make a binding agreement that the duty to convey will terminate on a day certain, such an agreement was made in this case. This kind of agreement is recognized as proper and effective in the cases cited above.

The buyers rely upon *MacFadden v. Walker* (1971) 5 Cal.3d 809 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1], and *Williams Plumbing Co. v. Sinsley* (1975) 53 Cal.App.3d 1027 [126 Cal.Rptr. 345], for their contrary argument. Both of these cases deal with factual situations different from what is involved here, and their holdings do not apply to the facts of this case.

The *MacFadden* case was an action by a buyer for specific performance of an installment land sale contract. Under that contract, the buyer took possession, made improvements, paid taxes and paid installments for several months. After that the buyer discontinued making payments claiming that she was entitled to a credit because some timber had been cut. The seller declared the buyer's rights terminated, and commenced the action to quiet title. The buyer tendered the entire balance due with interest, and cross-complained for specific performance of the sale contract. The Supreme Court held that although the contract declared that time was of the essence, and the buyer's default was wilful, she was entitled to relief. The trial court's judgment for specific performance of the sales contract was affirmed.

The reasoning of the *MacFadden* decision is grounded in the fact that the court was enforcing what is commonly referred to as a "land sale contract" which, typically, is a transaction wherein the buyer takes possession of the property and promises to pay the consideration by installments, but the seller withholds delivery of the deed until a substantial part or all of the payments have been received.[1] The *MacFadden* opinion acknowledges that this kind of land sale contract is functionally similar to a security device, such as a mortgage; and that the law gives a wilfully defaulting mortgagor an opportunity to cure his default.

---

[1]The 1961 Legislature enacted legislation for the purpose of providing special protection for purchasers under "land sale contracts." (See Civ. Code, § 2985 et seq.)
Section 2985 contains this definition: "A real property sales contract is an agreement

The *MacFadden* opinion rests upon the decision in *Barkis* v. *Scott, supra,* 34 Cal.2d 116, where (in the words of the *MacFadden* opinion at p. 813), "[W]e reevaluated the long line of precedents dealing with the question of when the vendee's interest may be forfeited because of his default in the performance of a land sale contract in which time is declared to be of the essence."

The *Barkis* opinion makes clear that the court recognized the distinction between a partially performed land sale contract, under which the buyer takes possession without a deed, and a purely executory agreement to exchange a deed for money. The *Barkis* court said (at p. 122): "In *Henck* v. *Lake Hemet Water Co.,* 9 Cal.2d 136 [69 P.2d 849], the only forfeiture that was involved was a loss of the benefit of the bargain, and the situation was therefore analogous to that where the contract is still wholly executory and no substantial expenditures have been made in reliance on it. It is settled that in such situations relief from default cannot be granted, when time has been made of the essence of the contract and there has been no waiver of or estoppel to assert the time provision."

■ In the light of this history, we cannot read *MacFadden* as overruling the established law that if the parties so agree, the buyer's timely tender of the purchase money is a condition precedent to the seller's duty to convey under a wholly executory agreement.

*Williams Plumbing Co.* v. *Sinsley, supra,* 53 Cal.App.3d 1027, was an action by a buyer for specific performance of a contract made September 16, 1973. The total price was $120,000. The buyer paid $12,000 in advance, and agreed to pay $15,000 on January 4, 1974, and the balance by March 1, 1974.

The deposit receipt provided that if the buyer failed to complete the purchase as therein provided, time being of the essence, the deposit might "be forfeited as liquidated damages" at the option of the seller.

During the month preceding January 4, the seller and the buyer's principal owner, Crosslin, had at least two conversations concerning the

wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and which does not require conveyance of title within one year from the date of formation of the contract."

manner in which the purchase would be financed. The seller expressed a preference for closing the deal as soon after January 1 as possible, and Crosslin said he would not wait until March, but " 'would close out the whole thing right away.' " (53 Cal.App.3d at p. 1029.)

The $15,000 installment was not paid on January 4. On January 5, there was another conversation in which the seller mentioned that he was "in the driver's seat," holding the $12,000 deposit. Crosslin said he did not think the January installment was important, and the seller said he would let Crosslin know his final decision on the 7th. That afternoon Crosslin consulted an attorney, after which he mailed a check for $15,000 to the escrow holder. On January 7, before delivery of the letter notifying the seller of that payment, the seller mailed a letter to the buyer declaring the contract terminated and returning the $12,000 deposit. The opinion does not state when the escrow holder received the $15,000.

The buyer commenced its action for specific performance on February 4. The trial court found the delay in payment of the January 4 installment was a material breach by reason of the provision in the deposit receipt, and denied relief. The Court of Appeal reversed in an opinion which relied principally upon *MacFadden* v. *Walker, supra.*

Although the facts are not fully stated in the *Williams* opinion, it does not appear that the contract there was a land sale agreement, as in *MacFadden*, under which the buyer had gone into possession. The *Williams* court appears not to have recognized that the *MacFadden* opinion was discussing a partially performed installment sales contract and not an executory agreement to deliver a deed for cash through an escrow.

On its facts, the *Williams* decision is fully consistent with the prior law relating to escrow transactions. The written agreement of the parties, interpreted in the light of the subsequent discussions, could not reasonably be interpreted as providing for an automatic termination upon failure to make the January 4 payment on time; nor does the evidence support a finding that the short delay was a material breach. (See, e.g., *Weneda Corp.* v. *Dispalatro* (1964) 225 Cal.App.2d 187, 191 [37 Cal.Rptr. 267]; *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d 537; *Lifton* v. *Harshman* (1947) 80 Cal.App.2d 422, 433 [182 P.2d 222] (waiver by conduct).) The seller's statement on January 5 was a clear acknowledgment that the agreement was still open for performance.

The facts in *Williams* bear no resemblance to the controlling facts of the present case. Instead of a continuing discussion between the parties, as in *Williams,* the last word between the parties at bar was an unambiguous written agreement that the seller's duty would expire on September 20.

The ultimate question to be decided in this court at this time is not whether the buyers, as plaintiffs, will ever be entitled to a judgment against some or all of the defendants, including the sellers. The issue is whether the superior court abused its discretion in granting the motion to expunge the notice of lis pendens.

Prior to 1968, Code of Civil Procedure section 409 permitted a plaintiff seeking to establish an interest in real property to record a notice of lis pendens, the effect of which was to cloud the record title to the property so long as the action remained pending. The oppressive quality of a notice of any lis pendens is obvious. A plaintiff may make a parcel of real property unmarketable for a period of two to five years, or more, while a civil action works its way through the courts. That procedure was subject to serious abuse, as a lever to force the property owner to settle with the plaintiff for reasons having no relationship to the merits of the plaintiff's claim. (See Comment, *Abuses of the California Lis Pendens: An Appeal for Legislative Remedy* (1966) 39 So.Cal.L.Rev. 108.) The 1968 Legislature enacted Code of Civil Procedure section 409.1 et seq., which established a motion procedure whereby the property owner might move for an order expunging the notice of lis pendens, upon an appropriate showing. The adequacy of this remedy was questioned, and, in 1976, the Legislature amended section 409.1 to place the burden of proof upon the party who had recorded the notice. (For background see *Review of Selected 1976 California Legislation* (1977) 8 Pacific L.J. 165, 453.)

This current statute requires that the court "shall, upon motion . . . order that the notice be expunged, unless the party filing the notice shows to the satisfaction of the court, by a preponderance of the evidence, that . . . the party recording the notice has commenced or prosecuted the action for a proper purpose and in good faith."

■ The ruling of the trial court indicates a finding that the plaintiffs failed to make a satisfactory showing. In reviewing this ruling, we must regard the trial court as the fact finder, and assume in favor of the trial court's ruling, every inference which can reasonably be drawn from the evidence presented to it. (See *Trapasso* v. *Superior Court* (1977) 73 Cal.App.3d 561, 567 [140 Cal.Rptr. 821].)

■ Upon this record we cannot say that the trial court abused its discretion. At the outset, there was a contract entered into with a buyer whose ability to perform was in doubt. Along the way she found she could not borrow a sufficient amount, and brought in another party to assist her. Time was extended by an agreement which contained a firm and legally effective deadline. The purchase money was neither paid nor tendered. The buyers then sued for specific performance and damages, accusing the sellers and others of a conspiracy to hinder the buyers' performance. When the buyers were called upon to advance proof of their good faith and proper purpose, their evidence gave the trial court good reason to be skeptical. Although they had the opportunity to take depositions, and did depose an officer of the escrow company, the buyers have produced no evidence in support of their theory that the escrow was mishandled. Finally, the buyers have not come forward with any evidence that any lending institution had been willing to lend them $160,000 on the terms the buyers could and would accept, although there should have been no difficulty in proving the fact if it was a fact.

The petition for a writ of mandate is denied.

Kingsley, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority reaches the result that the trial court was correct in issuing its "Order Expunging Lis Pendens" resulting from the filing by petitioners (hereinafter buyers) of a notice of pendency of the underlying action to require specific performance by real parties in interest (hereinafter sellers) of a contract to sell to buyers residential real property.[1] I disagree.

I am not in full accord with the majority's posing of the issue before us: that the ultimate question before this court is not whether the buyers, as plaintiffs, would ever be entitled to a judgment on the merits against the sellers or other defendants, but whether the superior court abused its discretion in granting the sellers' motion to expunge the notice of lis pendens. The majority concludes that it cannot hold that the trial court abused its discretion upon the record before us. It is my view that the

---

[1]On April 11, 1978, this court issued its order denying the petition for writ of mandate sought by petitioners. On May 25, 1978, the California Supreme Court granted a petition for hearing and then ordered the matter retransferred to this court with directions to issue an alternative writ of mandamus and calendar the matter for hearing, with the notation: "(See *Williams Plumbing Co.* vs. *Sinsley* (1976) 53 Cal.App.3d 1027.)"

record demonstrates beyond any reasonable doubt that the trial court's order of expungement constitutes an abuse of discretion.

In spite of the majority's posing of the issue as one *not* involving a question of whether the buyers as plaintiffs would be entitled to a judgment of specific performance against the sellers as defendants, the majority's opinion reaches the result that there was no abuse of discretion by the trial court by finding that the buyers as plaintiffs would *not* be entitled to recover a judgment of specific performance against the sellers in a trial on the merits. But as I shall point out below, one decisive issue before the trial court was whether the buyers *believed* that their claim against the sellers *might* be held valid—not whether their claim *would* in fact be held valid.

The majority reaches its result without an adequate discussion of the guiding principles set forth in Code of Civil Procedure section 409.1. That section, as applicable to the proceedings herein, provides that, on motion, an order shall be made that a notice of lis pendens be expunged unless the party who filed the notice makes a showing, to the satisfaction of the court, by a "preponderance of the evidence," that "the party recording the notice has commenced or prosecuted the action *for a proper purpose* and *in good faith.*" (Italics added.)

My reading of the record is substantially different from the reading made by the majority. I find no support in the record for the trial court's finding that the buyers failed to establish, by a preponderance of the evidence, that their action against the sellers for specific performance of a contract for the sale of residential real property was for a proper purpose and made in good faith.

The crux of the majority's view is that the buyers did not comply with the contract provisions that all of the purchase funds of $200,000, made up of a down payment and the proceeds of a first trust deed loan, be deposited in the escrow by September 20, 1977. Since this was not done, the majority concludes that the buyers could not prevail in the action on the merits and, therefore, the trial court acted within its discretion in issuing an order expunging the notice of lis pendens on a theory that the buyers had failed to carry the burden of proof as set forth in Code of Civil Procedure section 409.1.

It is to be noted that Code of Civil Procedure section 409.1 provides for a hearing "upon motion of a party to the action supported by affidavit"

and that "[t]he court shall determine the matter on the affidavits and counteraffidavits on file and upon such other proof as the court may permit." The hearing upon affidavits or declarations in support of and in opposition to a motion to expunge a notice of lis pendens, provided by section 409.1, is obviously not designed to be a trial on the merits. If the Legislature had intended for the trial court to issue an order expunging a lis pendens notice based upon whether a party instituting an action and filing such a notice could make a showing that he was clearly entitled to ultimate victory in his action in a trial on the merits, Code of Civil Procedure section 409.1 would have contained entirely different language from that which actually appears in the section.

The issue of whether a plaintiff in a specific performance action for the sale of residential property makes a showing that the action was commenced or prosecuted for "a proper purpose and in good faith" is a far cry from the issue of whether a plaintiff is able to make a showing, by affidavits or declarations, that he will surely recover when the action is tried on the merits. The procedure set forth in section 409.1 is not a procedure for a summary judgment of the underlying action between the parties.

I now turn to the question of what constitutes "a proper purpose and in good faith"—the showing required by section 409.1 to preclude an order for expunging of the notice of lis pendens. In *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], the court had occasion to define what constitutes an "improper purpose" (the reverse of a "proper purpose") with respect to the question of determining malice in an action for malicious prosecution, since "[t]he malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted primarily *for an improper purpose.*" (*Albertson, supra,* 46 Cal.2d 375, 383.) (Italics added.)

In defining the term "improper purpose" with respect to an action for malicious prosecution, the *Albertson* court observed: "It has been pointed out that the 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' (Rest., Torts, § 676, com. b; see also § 668, com. e.)" (*Id.,* at p. 383.)

In *United Professional Planning, Inc.* v. *Superior Court* (1970) 9 Cal.App.3d 377 [88 Cal.Rptr. 551], the court had before it the question of the meaning of the terms "improper purpose" and "not in good faith" as those terms were used in Code of Civil Procedure section 409.1, prior to the amendment of section 409.1 in 1976. In the pre-1976 version of Code of Civil Procedure section 409.1, an order to expunge a notice of lis pendens had to be supported by "clear and convincing proof" that the party recording the notice had commenced or prosecuted the action "for an *improper* purpose and *not* in good faith." (Italics added.)

The *United Professional Planning* court held that the *Albertson* definition of "improper purpose" for proof of malice in an action for malicious prosecution of a civil proceeding was appropriate for the meaning to be given to the same term in the pre-1976 Code of Civil Procedure section 409.1. Thus, the *United Professional Planning* court stated that an "improper purpose" would refer to the following situations: (1) where " ' "the proceedings are begun primarily because of hostility or ill will" ' "; (2) where " ' "the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property" ' "; or (3) where " ' "the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' " (*United Professional Planning, Inc., supra,* 9 Cal.App.3d 377, 388.)

The *United Professional Planning* court also held that the term "not in good faith" used in the pre-1976 version of Code of Civil Procedure section 409.1 should have the same meaning referred to in *Albertson,* namely, that the person initiating the underlying action "does not believe that his claim may be held valid." (*Id.,* at p. 388.)

In the 1976 version of Code of Civil Procedure section 409.1,[2] the pre-1976 provisions were changed to impose the burden upon the party filing a notice of lis pendens to make a showing to preclude an order that the notice be expunged. This change was effectuated by requiring such party to establish, by a preponderance of the evidence, that he has commenced or prosecuted the action "for a proper purpose and in good faith." I consider it reasonable and appropriate to interpret the terms "in good faith" and "a proper purpose," as used in Code of Civil Procedure section 409.1, after the 1976 amendment, as constituting the very reverse of the terms "an *improper* purpose" and "*not* in good faith" as those latter terms are interpreted by the *United Professional Planning* court.

[2]Amended by Statutes 1976, chapter 27, section 1, page 42.

It is my view that the trial court in the case before us unquestionably abused its discretion in issuing an order expunging the notice of lis pendens because the record demonstrates, with no room for reasonable dispute, that the buyers established, by more than a preponderance of the evidence, that the specific performance action against the sellers was commenced and prosecuted "in good faith" because they believed that their action for specific performance would be held valid, and was commenced and prosecuted "for a proper purpose" because such action was not begun out of any hostility or ill will, nor initiated for the purpose of depriving the sellers of a beneficial use of their property, nor initiated for the purpose of forcing a settlement which had no relation to the merits of the action.

I consider much of the majority's opinion to be extraneous to the issue before us—that of the appropriate interpretation of Code of Civil Procedure section 409.1. Thus, the majority emphasizes that the escrow instructions made it clear that full performance by the buyers on or before September 20 was a condition precedent to their right to require the sellers to convey the property to them. But this interpretation of the contract between the parties does not begin to answer the question of whether, under section 409.1, the buyers have made the necessary showing to preclude the issuance of an order expunging the notice of lis pendens.

The majority seeks to distinguish *Williams Plumbing Co.* v. *Sinsley* (1975) 53 Cal.App.3d 1027 [126 Cal.Rptr. 345], and *MacFadden* v. *Walker* (1971) 5 Cal.3d 809 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1], and thus find that they are not controlling in the case at bench. It is my view that the *Williams Plumbing Co.* and *MacFadden* cases are dispositive of the issue before us and mandate a finding that the trial court abused its discretion in issuing an order expunging the notice of lis pendens.

The majority points out that the *MacFadden* and *Williams Plumbing Co.* cases have factual situations different from that involved in the case at bench. But this is an irrelevant consideration. As I shall explain, although the factual situations of these two cases may be different in some respects from that involved in the case at bench, the significant point is that *Williams Plumbing Co.* and *MacFadden* enunciated principles of law which are controlling here.

The *Williams Plumbing Co.* case involved an executory contract for the purchase of real property which was not a single family residence, but

consisted of two duplexes. The issue involved was whether the buyer had lost its right of specific performance against the seller for failure to fulfill a condition precedent where time was made of the essence of the contract. Although the court recognized that time *was* of the essence, the court nevertheless held that a delay in performance by the buyer did *not* preclude the buyer from obtaining specific performance against the seller. The basic teaching of *Williams Plumbing Co.* is the rejection of the principle set forth in *Major-Blakeney Corp.* v. *Jenkins* (1953) 121 Cal.App.2d 325 [263 P.2d 655] " 'that a failure of a party to comply with the terms of his contract, time being of the essence, entitles the other party to terminate the contract.' " (*Williams Plumbing Co., supra,* 53 Cal.App.3d 1027, 1032.)

In rejecting the principle set forth in *Major-Blakeney Corp.,* the *Williams Plumbing Co.* court relies upon *MacFadden* v. *Walker* (1971) *supra,* 5 Cal.3d 809, in which the court stated that "[i]n *Barkis* v. *Scott, supra,* 34 Cal.2d 116, we reevaluated the long line of precedents dealing with the question of when the vendee's interest may be forfeited because of his default in the performance of a land sale contract in which time is declared to be of the essence. We concluded that when a forfeiture would otherwise result, the vendee can be relieved therefrom if he proves facts justifying relief under section 3275 of the Civil Code . . . ." (*MacFadden, supra,* 5 Cal.3d 809, 813.)

Civil Code section 3275 provides: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." With further reference to *Barkis,* the *MacFadden* court made this observation: "Since it appeared as a matter of law that the vendees' breach in *Barkis* was neither grossly negligent, wilful, nor fraudulent, but was at most the result of simple negligence in the management of their checking account, we had no occasion to consider whether section 3275 [of the Civil Code] was the exclusive source of their right to be relieved from forfeiture by keeping their contract in force." (*MacFadden, supra,* 5 Cal.3d 809, 813.)

In *Williams Plumbing Co.,* a contract for the sale of two duplexes fixed the purchase price at $120,000, with a deposit of $12,000 paid on September 16, 1973. The contract provided for the buyer to deposit an additional sum of $15,000 on January 4, 1974, with the balance due by

March 1, 1974. It was understood between the parties that the balance of $93,000 would be financed by the buyer securing a loan from a lending institution. The contract contained the provision that " 'in the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, time being of the essence of' this contract, the amount of said deposit shall at the option of the seller, be forfeited as liquidated damages.' " (53 Cal.App.3d 1027, 1029.) The buyer did not make the January 4 payment of $15,000. On January 7, the seller declared the contract terminated and refunded the $12,000 deposit to the buyer. On February 4, approximately one month later, the buyer filed an action for specific performance.

The question presented in *Williams Plumbing Co.* was whether, under Civil Code section 3275, a buyer is entitled to a relief from forfeiture and to specific performance of a real estate sales contract, if the only forfeiture involved is a loss of benefit of the bargain, since the seller refunded to the buyer the deposit of $12,000 made by it. The *Williams Plumbing Co.* case interprets *MacFadden* as recognizing the principle that a relief from default is available to a buyer, even though time is made of the essence of the contract, and even though the only forfeiture involved is the buyer's loss of benefit of the bargain of obtaining the property which is the subject of the contract. Thus, the *Williams Plumbing Co.* court observed that "[t]he opinion [in *MacFadden*] appears to recognize that loss of the benefit of the buyer's bargain is the equivalent of a penalty or forfeiture within the meaning of the code sections relied on in *Freedman, supra.*"[3] (*Williams Plumbing Co., supra,* 53 Cal.App.3d 1027, 1033.)

In *Williams Plumbing Co.,* the court concluded that, even though the contract provided that time was of the essence of the contract, the buyer's *failure* to pay the $15,000 required on the date specified in the contract—January 4—did *not* give the sellers the right to terminate the contract because there was no showing that the buyer was precluded from being relieved of a forfeiture under Civil Code section 3275 either

---

[3]The *Freedman* case referred to is *Freedman v. The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629], and the code sections relied on in *Freedman* are Civil Code section 3275 and Civil Code sections 3294, 1670, 1671 and 3369. The *MacFadden* court explained that in *Freedman,* the court had "held that section 3275 is not the exclusive source of the right to relief from forfeiture. We concluded that the prohibition of punitive damages for breach of contract (Civ. Code, § 3294), the strict limitations on the right to provide for liquidated damages (Civ. Code, §§ 1670, 1671), and the provision that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . .' (Civ. Code, § 3369) together established a policy that precludes any forfeiture having no reasonable relation to the damage caused by the vendee's breach even when that breach is wilful." (*MacFadden, supra,* 5 Cal.3d 809, 813-814.)

because of being "grossly negligent" in failing to make the payment or because the failure to make the payment was "intentional."

In *MacFadden,* a defaulting purchaser was held entitled to specific performance of an installment land sale contract, even though the default was willful or intentional. "We believe that the anti-forfeiture policy recognized in the *Freedman* case also justifies awarding even wilfully defaulting vendees specific performance in proper cases." (*MacFadden, supra,* 5 Cal.3d 809, 814.) In *Williams Plumbing Co.,* the buyer's breach was *not* intentional and the court remarked: "It would be illogical to afford appellant less relief than that given to the defaulting vendee in *MacFadden.*" (*Williams Plumbing Co., supra,* 53 Cal.App.3d 1027, 1034.) The *Williams Plumbing Co.* court reversed the trial court's judgment denying the buyer specific performance against the sellers with instructions that the defaulting buyer should be given a reasonable time required to complete its financing.

Contrary to the view of the majority, the principles set forth in *MacFadden* and *Williams Plumbing Co.* are controlling in the case before us. Hence, we should issue a writ of mandate requiring the trial court to vacate its order expunging the buyers' notice of lis pendens. The buyers are entitled to have their specific performance action tried on the merits, free from the possibility that the sellers may thwart the buyers' right to specific relief by selling the property to another prior to trial.

The record establishes that, in the case before us, the parties to the contract had agreed upon a sales price of $200,000 for this single-family residence located in Malibu. The contract called for a down payment of $40,000 with the buyers to obtain a loan secured by a first trust deed in the amount of $160,000. Upon the execution of the contract in July, the buyers made a deposit of $1,000 into escrow. In August, an additional $4,000 was deposited into escrow by the buyers. On September 20, 1977, the buyers deposited an additional $38,428 into the escrow. This odd sum of $38,428 was deposited in escrow because the buyers were informed that such amount would be the balance needed to complete the purchase. On September 21, the very next day after the date specified for the closing of the escrow, the buyers received a letter from Malibu Escrow stating that the escrow had been cancelled and returning to the buyers the sum of $43,268. On the same date of September 21, Great Western Savings and Loan was contacted and the buyers were advised that the reason the loan was not funded as of September 20 was because the lending institution had not received from Malibu Escrow a title report on

the subject property. The following day, September 22, the buyers' attorney delivered a letter to Malibu Escrow wherein the buyers stated they were prepared to close the escrow forthwith. On this same date of September 22, the buyers' attorney received a Western Union Mailgram from the Malibu Escrow which stated: "1. Lorna Normandy of Great Western Savings and Loan has advised us this date that loan documents are ready for signature. 2. We have received a letter, dated this date, from Mr. Altagen, who represents the buyers stating that buyers take the position that the escrow is still pending and that the funds returned to them by our office will be placed in Mr. Altagen's office trust account on behalf of the sellers. As of this date we have not received any instructions from the sellers to proceed with the close of escrow and therefore require mutual instructions in this matter. Otherwise we must abide by present terms and conditions of escrow instructions and ammend [*sic*] there to."

The buyers' complaint for specific performance was filed on September 23, 1977, three days after the date the escrow was cancelled. On September 28, 1977, the buyers' attorney wrote to the sellers' attorney stating that his clients, the buyers, were ready, willing and able to perform the contract for the purchase of the Malibu residence and that Great Western Savings and Loan had committed themselves to the loan of $160,000, and that the balance of the funds to complete the purchase price was being held in the attorney's trust account.

The record thus amply demonstrates that the buyers were ready, willing and able to complete their part of the contract within two or three days following the date specified in the contract for full performance by the buyers.

The majority takes the position that the evidence presented by the record is not competent evidence. This view seems to be predicated on the fact that the buyers presented no testimony or an affidavit or declaration from an employee of Great Western Savings regarding the reason for not funding the loan to the buyers as of September 20, 1977. In holding that the buyers presented no competent evidence, the majority simply overlooks the fact that Code of Civil Procedure section 409.1 specifically sets up a hearing-on-a-motion procedure for determining whether a notice of lis pendens should be expunged, with the matter to be decided on affidavits and declarations and counteraffidavits and declarations.

The majority refuses to concede any relevant significance to the Western Union Mailgram from Malibu Escrow which was received by the buyers' attorney. This Mailgram contains a statement by Malibu Escrow that it had been advised by Lorna Normandy of Great Western Savings and Loan on September 22, just two days after the performance date of September 20, that loan documents were ready for signature. The majority seeks to cast doubt on the genuineness of this Mailgram document which names a *specific employee* of Great Western as having given this advice to Malibu Escrow. To show the unsoundness and unsubstantial character of the majority's position, I need only pose the question: If this Western Union Mailgram was not genuine, why is it that the record does not reflect any counteraffidavit from any employee of Malibu Escrow or Great Western Savings, presented by the sellers, that no such Mailgram from Malibu Escrow was sent to the buyers' attorney, Robert Altagen?

The majority even suggests that this Mailgram is lacking in relevancy because it does not set forth whether the loan commitment from Great Western Savings was in accord with the provisions of the contract. To reject the relevancy of the Mailgram on this basis is to repudiate the universally accepted evidentiary principle of the circumstantial evidence reasoning process that permits the finding of a fact by drawing reasonable inferences from evidence or from other facts. (See Evid. Code, §§ 210 and 600, subd. (b).)

The approach by the majority represents faulty analysis in reaching the result that the buyers should be denied relief in this writ of mandate proceeding. I view the affidavit and declaration evidence that was before the trial judge in the instant case as proving, far beyond the preponderance-of-the-evidence standard, that the buyers commenced and prosecuted the specific performance action "in good faith" because the buyers believed that their "claim may be held valid"—applying inversely the test set forth in *United Professional Planning*. I fail to see one iota of evidence in this record that would support the trial judge's finding that the buyers did not believe that their claim would be held valid.

Similarly, the evidence demonstrates, beyond the preponderance-of-the-evidence standard, that the buyers commenced and prosecuted the specific performance action "for a proper purpose" in that there is no shred of evidence that would justify any finding that the buyers either (1) started the proceeding primarily because of hostility or ill will, or (2) that

the specific performance action was initiated by the buyers solely for the purpose of depriving the sellers of a beneficial use of their property, or (3) that the specific performance action was initiated by the buyers for any purpose of forcing a settlement which had no relation to the merits of the claim—again applying inversely the test of what is an "improper purpose" set forth in *United Professional Planning*.

Even though time was made of the essence of the bargain between the parties and performance by the buyers by September 20 was made the last performance date, the buyers cannot be barred from obtaining specific performance of the sales agreement simply because they were not in a position to comply with all of the terms and conditions of the contract until two or three days subsequent to the performance date of September 20.

The cases of *MacFadden* v. *Walker, supra,* 5 Cal.3d 809, and *Williams Plumbing Co.* v. *Sinsley, supra,* 53 Cal.App.3d 1027, unequivocally set forth the principle that a buyer in a sale-of-real-property contract cannot be precluded from obtaining specific performance by reason of a failure to perform his part of the bargain on a date specified—even though time is made of the essence of the contract, and even though the only "forfeiture" involved is that the buyer will lose the benefit of his bargain.

It bears repeating that in *MacFadden,* the court pointed out that in *Barkis* v. *Scott, supra,* the defaulting buyers in a sale-of-land contract in which time was declared to be of the essence, were held entitled to be relieved of their default and to be granted specific performance "[s]ince it appeared as a matter of law that the vendees' breach in *Barkis* was neither grossly negligent, wilful, nor fraudulent, but was at most the result of simple negligence in the management of their checking account, . . ." (*MacFadden, supra,* 5 Cal.3d 809, 813.) The situation in the instant case is not unlike that of *Barkis*. I consider that the record before us demonstrates, as a matter of law, that the buyers' breach was neither grossly negligent, wilful, nor fraudulent, but was at most the result of simple negligence in believing that Malibu Escrow would keep in contact with Great Western Savings and notify the buyers if the loan feature of the sales transaction was not progressing with sufficient dispatch to enable the loan funds to be deposited in escrow by September 20.

The majority seems to think that the *MacFadden* court was limiting the application of its statement of legal principles to a partially performed installment land sales contract and not to an executory agreement to

deliver a deed for cash through an escrow. I can see no basis for any such interpretation of *MacFadden*. Nor do I see any logic in the majority's view that, if time is made of the essence in an executory contract, a buyer's breach *automatically* precludes the buyer from being relieved of forfeiture and from obtaining specific performance. Neither *Barkis, Freedman, MacFadden,* nor *Williams Plumbing Co.* is capable of offering support to this astonishing and devastatingly punitive principle advanced by the majority which would limit the application of Civil Code section 3275 to the partially performed land sales contract and would limit the meaning of "forfeiture," as that term is used in section 3275, to preclude a loss to the buyer of the benefit of the bargain from constituting a "forfeiture." The majority's view is simply contrary to the holding of *Williams Plumbing Co.,* which specifically rejected the theory that relief from forfeiture and the right to specific performance may be granted *only* if there has been substantial part performance in a land sales installment contract, which would have the consequence of denying to a buyer relief from default in an executory contract providing that time is of the essence of the contract and where the only forfeiture is a loss of the benefit of the bargain.

The forfeiture of a loss of the benefit of the bargain is of real significance in the case at bench because we are dealing with single family *residential* property and not income investment property. Nor do the sellers suffer any inequity since they will receive the purchase price in return for their surrender of the property.

Finally, it is to be noted that *Barkis, Freedman, MacFadden* and *Williams Plumbing Co.* are all cases in which the decisions were rendered in a buyer's action for specific performance against the seller. The decisions, therefore, were decisions on the merits. But in the case at bench, we are not dealing with a specific performance action that has been tried on the merits below. The principles of these cases become applicable here only insofar as they relate to the issue of whether the buyers before us, in a hearing-on-a-motion proceeding, established that their specific performance action was initiated and prosecuted "for a proper purpose and in good faith" as required by Code of Civil Procedure section 409.1. The showing required is certainly less than that required in the specific performance action itself. But the principles set forth in *Barkis, Freedman, MacFadden,* and *Williams Plumbing Co.* are relevant to the determination which must be made in a section 409.1 proceeding and lead inexorably to the conclusion that the buyers' specific performance action was commenced and prosecuted "for a proper

purpose and in good faith." (See *United Professional Planning, supra,* 9 Cal.App.3d 377.) In light of the principles set forth in *Barkis, Freedman, MacFadden* and *Williams Plumbing Co.,* the buyers reasonably could believe that their claim to specific performance might be held valid.

I would therefore issue the writ of mandate as prayed for by the buyers—requiring the trial judge to vacate and set aside his order expunging the notice of lis pendens.